IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>BRET TSCHACHER, )<br>)<br>Defendant. ) | 4:09CR3025<br><br>AMENDED<br>FINDINGS AND<br>RECOMMENDATION |

This matter is before the court the motion to suppress evidence (filing no. 22) filed by defendant Bret Tschacher ("Tschacher"). The defendant claims his Fourth Amendment rights were violated when his vehicle was searched, and his Fifth Amendment rights were violated when he was questioned by Nebraska State Trooper Mickie Downing Jr. ("Trooper Downing") following a traffic stop conducted on December 26, 2008. For the reasons set forth below, Tschacher's motion should be denied.

**FINDINGS OF FACT**

On December 26, 2008, Trooper Downing observed a pickup driven by Tschacher roll through a stop sign in Chadron, Nebraska. Trooper Downing activated his lights and initiated a traffic stop of the pickup. During the stop, Trooper Downing asked Tschacher for his driver's license and vehicle registration. Tschacher produced the registration but stated he did not have a valid driver's license.

At that point, Trooper Downing asked Tschacher to accompany him to the front seat of the patrol car. Trooper Downing conducted a brief pat down search of Tschacher and then escorted Tschacher to the front passenger seat of the patrol car. Once in the patrol car, Trooper Downing asked Tschacher a series of questions regarding his address and other

personal information, such as his date of birth. Trooper Downing reported Tschacher's name and date of birth to dispatch. Dispatch responded that Tschacher's driver's license was suspended. Upon questioning by Trooper Downing, Tschacher admitted that he knew his license was suspended.

Trooper Downing then asked Tschacher to exit the squad car. Trooper Downing placed Tschacher in handcuffs and placed him in the back seat area of the squad car. Tschacher was not read his <u>Miranda</u> rights at any point during the traffic stop.

With Tschacher's permission, Trooper Downing returned to the pickup to replace the vehicle registration. Trooper Downing then commenced a search of Tschacher's pickup, and during the search, discovered a handgun in a "miniature backpack" and a rifle. Trooper Downing called in the gun descriptions and serial numbers to dispatch, and dispatch reported Tschacher was a convicted felon.

When Trooper Downing returned to the squad car, Tschacher immediately asked Trooper Downing to return to the pickup to retrieve a bag full of what Tschacher referred to as "legal papers." Trooper Downing asked what the "legal papers" pertained to, "child custody stuff" or something else. Tschacher responded the papers were related to the guns; a response which lead to the following exchange:

>   Trooper Downing:   That's what I'm asking you. They're saying that you're a convicted felon.
>
>   Tschacher:   That's a crock of crap. If you'll get those papers and stuff and let me out of these cuffs so I can show you something, I will show you something.
>
>   Trooper Downing:   Okay.

2

| | |
|---|---|
| Tschacher: | I've fought this thing and I've fought it and I've fought it and I've got the papers to prove its garbage and the State of Nebraska refuses to deal with it. |
| Trooper Downing: | Okay. What was the . . . what felony were you arrested for? I'm starting back at the beginning. I'm not asking you if you were guilty or not guilty. |

Tschacher stated he was arrested for a felony theft, but denied committing the felony and provided some additional background regarding his legal proceedings on the felony theft charges and his subsequent probation. Tschacher and Trooper Downing did not discuss the matter further and Trooper Downing retrieved the papers from the pickup.

Trooper Downing transported Tschacher to the county jail and upon arrival, escorted Tschacher into the building for booking. Without prompting from Trooper Downing, Tschacher stated his wife had a concealed weapons permit and the pickup truck was hers. Trooper Downing did not respond to this statement. Tschacher also made the unprompted statement that he wanted the case in federal court. Trooper Downing responded that he had "no vested personal interest in this [case] one way or another," and he did not care if it went to federal court and the federal prosecutors "lost the case."

## ANALYSIS

Tschacher argues that the search of his pickup violated his Fourth Amendment right to be free from an unreasonable search and seizure. Tschacher further argues his Fifth Amendment privilege against self-incrimination and his <u>Miranda</u> rights were violated by Trooper Downing.

     1.    The Fourth Amendment.

Prior to the Court's ruling in Arizona v. Gant, - - - U.S. - - - , 129 S.Ct. 1710 (2009), Trooper Downing's warrantless search of the defendant's vehicle was considered a permissible search incident to arrest. Relying on New York v. Belton, 453 U.S. 454 (1981), the Eighth Circuit had held a vehicle could be lawfully searched incident to an arrest even where the arrestee was handcuffed and placed in the back of a patrol car and the search was unrelated to the offense for which the defendant was arrested. See United States v. Hrasky, 453 F.3d 1099, 1102 (8th Cir. 2006)(holding the vehicle of a defendant arrested for driving on a suspended license could be searched incident to arrest even after the defendant was handcuffed and placed in the back of the police officer's car). Hrasky held:

> [I]n the case of a full custodial arrest of an "occupant" or "recent occupant" of a vehicle . . . the police officer may search the passenger compartment of the vehicle as "a contemporaneous incident" of that arrest. Such a search . . . is "reasonable" under the Fourth Amendment.

Hrasky, 453 F.3d at 1101; see also United States v. Weaver, 433 F.3d 1004, 1106 (9th Cir. 2006)(upholding a vehicle search after the suspect had been arrested, handcuffed and secured in the back of a squad car); United States v. White, 871 F.2d 41, 44 (6th Cir. 1989)(same).

The legal parameters of searches conducted incident to arrest were changed or substantially narrowed by the Court's decision in Gant. In Gant, the Supreme Court expressly held that a vehicle may be lawfully searched incident to an arrest only if the law enforcement officer reasonably believes the individual in custody can access his car at the time of the search or "that evidence of the offense for which he was arrested" might be found withing the vehicle. 129 S.Ct. at 1719.

Based on the evidence of record, Trooper Downing did not search the defendant's vehicle for evidence related to driving under a suspended license, and by time the vehicle search was conducted, the defendant was in handcuffs and seated in the officer's vehicle. Therefore, neither of the exceptions announced in Gant authorized a search of defendant's vehicle as incident to his arrest, and the trooper's vehicle search violated the Fourth Amendment under the Gant decision.

However, the search of defendant's vehicle occurred before the Gant ruling. The government argues that because Trooper Downing complied with and relied upon well-settled case law existing at the time the search was conducted, the good faith exception announced in United States v. Leon, 468 U.S. 897, 906 (1984) precludes suppression of the evidence obtained during the search. As stated in Leon, a Fourth Amendment violation will not always lead to exclusion of evidence produced as a result of an unconstitutional search and seizure. Leon, 468 U.S. at 906. The exclusionary rule in Fourth Amendment cases is not applied as a matter of right but is a "judicially created remedy designed to safeguard Fourth Amendment rights generally through its deterrent effect, rather than a personal constitutional right of the party aggrieved." Id. at 906 (quoting United States v. Calandra, 414 U.S. 338, 348 (1974)). Because "the purpose of the exclusionary rule is to deter unlawful police conduct . . . evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment." Id. at 919 (quoting United States v. Peltier, 422 U.S. 531, 542 (1975). "[W]hen law enforcement officers have acted in objective good faith . . . the magnitude of the benefit conferred on such guilty defendants offends basic concepts of the criminal justice system" if the evidence gained from the search is excluded. Id. at 907-08. "Whether the exclusionary sanction is appropriately imposed in a particular case . . . is 'an issue separate from the question whether the Fourth Amendment rights of the party seeking to invoke the rule were violated by police

conduct.' " See Leon, 468 U.S. at 906 (quoting Illinois v. Gates, 462 U.S. 213, 233 (1983)); see also United States v. McCane, 537 F.3d 1037, 1045 n. 5 (10th Cir. 2009)(addressing the identical legal issue present in this case and noting that the question was not whether Gant applied at all, but rather the proper application of Gant).

In Leon, the Supreme Court did not suppress evidence obtained by law enforcement officers pursuant to a warrant issued by a magistrate judge even though the warrant was later deemed to be invalid. 468 U.S. at 922. In so holding, the Court determined that "the marginal or nonexistent benefits produced by suppressing evidence obtained in objectively reasonable reliance on a subsequently invalidated search warrant cannot justify the substantial costs of exclusion." Id. Following the reasoning in Leon, the Court has expanded application of the Leon "good faith" exception to circumstances other than good faith reliance on an invalid warrant. See Illinois v. Krull, 480 U.S. 340, 349-53 (1987)(extending the Leon exception to evidence procured through a warrantless search conducted pursuant to a statute that was later declared unconstitutional; Arizona v. Evans, 514 U.S. 1 (1995)(applying the good faith exception to an unlawful arrest conducted in reliance on erroneous warrant information in the court's database; Herring v. United States, - - - U.S. - - - , 129 S.Ct. 695 (2009)(extending the good faith exception to a search incident to an arrest where the arrest was illegal because the warrant had been recalled but was still in the law enforcement computer database due to negligent record keeping).

After reviewing the previously cited Supreme Court opinions, the McCane court analyzed the identical issue now before this court and concluded:

> Two inseparable principles have emerged from the Supreme Court cases and each builds upon the underlying purpose of the exclusionary rule: deterrence. First, the exclusionary rule seeks to deter objectively reasonable police conduct, i.e., conduct which an officer knows or should know violates the

> Fourth Amendment. See, e.g., Herring, 129 S.Ct. at 701-04; Krull, 480 U.S. at 348-49 . . . . Second, the purpose of the exclusionary rule is to deter misconduct by law enforcement officers, not other entities, and even if it was appropriate to consider the deterrent effect of the exclusionary rule on other institutions, there would be no significant deterrent effect in excluding evidence based upon the mistakes of those uninvolved in or attenuated from law enforcement.

McCane, 573 F.3d at 1044. Based on this reasoning, McCane held a law enforcement officer's good faith reliance on the pre-Gant interpretation of Belton as it applied to searches incident to an arrest provided sufficient reason not to apply the Fourth Amendment exclusionary rule to evidence collected prior to the holding in Gant. See McCane, 573 F.3d at 1045. McCane explained that excluding evidence obtained by an officer in reliance on the erroneous decision of a circuit court would serve no deterrent purpose. Id.; see also Davis, 2010 WL 810984 at *7 (finding application of the exclusionary rule inappropriate where the mistake of law is attributable to the court rather than the law enforcement officer).

As applied to Tschacher's motion to suppress, there is no question that the law in the Eighth Circuit regarding searches incident to an arrest was well-settled prior to Gant, and Tschacher's arrest and the subsequent search of his vehicle occurred on December 26, 2008, more that four months before the decision in Gant was handed down. At the time of the stop, Trooper Downing's actions were entirely consistent with the rule regarding searches incident to an arrest as defined in Belton and Hrasky. Based on the legal interpretation of the Fourth Amendment available to him at the time, Trooper Downing acted in accordance with the then-existing case law. As was the case in USA v. Gray, 4:09-cr-03089 (filing no. 32), the search here was performed in good faith and no deterrent effect will be gained from excluding the evidence. Accordingly, Tschacher's motion to suppress the evidence obtained as a result of the search of his car should be denied.

2. The Fifth Amendment.

Tschacher also seeks suppression of statements he made to Officer Downing shortly after Tschacher was arrested. Tschacher argues that he was subject to an interrogation without receiving Miranda warnings.

Miranda warnings are required when an individual has been subjected to a "custodial interrogation." Miranda v. Arizona, 384 U.S. 436, 444-45 (1966). The warnings are necessary "to dispel the compulsion inherent in custodial surroundings." Id. at 444. For the purposes of the Miranda warnings "interrogation" refers to "questioning initiated by law enforcement officers." Id. at 444. This definition was later enlarged to include "any words or actions on the part of the police . . . that the police should know are reasonably likely to elicit an incriminating response from the suspect." Rhode Island v. Innis, 446 U.S. 291, 300-01 (1980).

However, where the defendant initiates the conversation with a law enforcement officer, an officer's request for clarification of the defendant's statements is "not generally construed as interrogation for Miranda purposes if the question does not 'enhance the defendant's guilt or raise the offense to a higher degree. . . .' " Butzin v. Wood, 886 F.2d 1016, 1018 (8th Cir. 1990) (quoting W.R. LaFave & J.H. Israel, 1 Criminal Procedure § 6.7, at 514 (1987)). Further, "Miranda does not bar the government from introducing into evidence spontaneous statements made during a conversation not initiated by the officer." United States v. Chipps, 410 F.3d 438, 445 (8th Cir. 2005)("An officer's request for clarification of a spontaneous statement generally does not constitute interrogation.").

In Chipps, the defendant, who was arrested for assault, sought to suppress statements he made to the law enforcement officers while he was being fingerprinted, but before he was

8

given Miranda warnings. One of the officers who was involved in a high-speed chase of the defendant the previous day was assisting with the fingerprinting. When the officer mentioned he was one of the officers who had tried to stop the defendant the day before, the defendant stated he would have stopped if the officers had identified themselves and, after "about a minute" of silence, further acknowledged he knew there was a warrant out for his arrest and that law enforcement officers were looking for him. Id. at 444. The officer asked how long the defendant had known about the warrant, and the defendant responded he had known a warrant existed for three years. Under such facts, the Eighth Circuit determined that the statements made by Chipps were admissible. 410 F.3d at 445. The court held that the law enforcement officer's initial statement regarding the high-speed chase was not an interrogation because it was "not likely to elicit incriminating evidence." Id. Further, any subsequent questions by the officer were deemed permissible as seeking clarification of the spontaneous statements made by the defendant. Id.

In this case, the exchange between Tschacher and Trooper Downing was initiated by Tschacher, and when considered in context, the conversation could not be reasonably interpreted as an interrogation. Tschacher expressly asked Trooper Downing to retrieve "legal papers" from Tschacher's pick-up. The ensuing conversation involved Trooper Downing seeking clarification as to the type of "legal papers" located in the vehicle. Trooper Downing's follow-up statement – "They are saying you are a convicted felon" – is best characterized as "a statement of fact not a plea to the conscience, and it was not accompanied by any threats or other coercive pressure." Id. at 445. Indeed, Trooper Downing was simply restating a fact – he had been informed that Tschacher was a convicted felon. Tschacher went on to discuss the purpose of the papers – presumably his record of "fighting" the State of Nebraska on his conviction. The subsequent question by Trooper Downing merely sought clarification of ambiguous statements made by Tschacher.

The remaining statements made by Tschacher regarding his wife's concealed weapons permit and his desire to have the case tried in federal court are also admissible. These statements were not made in response to any questions or comments by Trooper Downing. They were clearly the type of spontaneous comments which have long been held to be admissible. See Chipps, 410 F.3d at 445; United States v. Koontz, 143 F.3d 408, 411 (8th Cir. 1998); Butzin, 886 F.2d at 1018.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b), that the motion to suppress filed by Bret Tschacher (filing no. 22) be denied in its entirety.

Defendant Tschacher is notified that failing to file an objection to this recommendation as provided in the local rules of this court may be held to be a waiver of any right to appeal the court's adoption of the recommendation.

IT IS ORDERED that the previously filed findings and recommendation, (filing no. 39), be stricken for the reason that the incorrect trial judge was named in the recommendation.

DATED this 20th day of May, 2010.

BY THE COURT:

s/ *Cheryl R. Zwart*
United States Magistrate Judge

---

\*This opinion may contain hyperlinks to other documents or Web sites. The U.S. District Court for the District of Nebraska does not endorse, recommend, approve, or guarantee any third parties or the services or products they provide on their Web sites. Likewise, the court has no agreements with any of these third parties or their Web sites. The court accepts no responsibility for the availability or functionality of any hyperlink. Thus, the fact that a hyperlink ceases to work or directs the user to some other site does not affect the opinion of the court.